# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHAEL LOCKRIDGE,
individually and on behalf of all
others similarly situated,
     Plaintiff,
v.
QUALITY TEMPORARY
SERVICES, INC. d/b/a QUALIFIED
STAFFING
     Defendant.

Case No. 4:22-cv-12086
District Judge F. Kay Behm

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
# <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

## **STATEMENT OF ISSUES PRESENTED**

1. Should the Court grant final certification of the Settlement Class for settlement purposes pursuant to Rule 23(a) and (b)(3)?

   **Plaintiff's Answer: Yes.**

2. Did the notice to the Settlement Class satisfy the requirements of Due Process and Federal Rule of Civil Procedure ("Rule") 23, when direct notice—detailing the terms of the Settlement Agreement and individual options for objecting, opting out, or automatically receiving payment—was transmitted via email and postcard and reached approximately 94.3% of the Class, and when publication notice was also provided via national press release?

   **Plaintiff's Answer: Yes.**

3. Should the Court grant final approval of the Settlement, finding it fair, reasonable, and adequate, when it delivers meaningful monetary relief and remedial measures to the Settlement Class?

   **Plaintiff's Answer: Yes.**

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

- Fed. R. Civ. P. 23

- *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

# TABLE OF CONTENTS

Statement of Issues Presented ..................................................................ii

Controlling and Most Appropriate Authorities..........................................iii

Table of Authorities ...................................................................................vi

I.     Introduction ...................................................................................... 1

II.    Factual and Procedural Background ................................................. 3

III.   Summary of the Settlement .............................................................. 3

       A.   Settlement Benefits ……………………………………...……………3

       B.   Notice and Administration Expenses ……………………………………6

       C.   Attorneys' Fees, Expenses, and Service Award …………………………...6

IV.    The Settlement Warrants Final Approval .......................................... 6

       A.   The Settlement Satisfies all of the Rule 23(e)(2) Factors…………..………8

            1.   The Class was Adequately Represented………..……………..……..……8

            2.   The Settlement was Negotiated at Arm's Length…..………………..………8

            3.   The Relief is Adequate Under 23(e)(2)(C)……………………..………9

                 i.    The Costs, Risk, and Delay of Trial and Appeal………………..…..9

                 ii.   The Method of Distributing Relief is Effective…………..………..10

                 iii.  The Terms Relating to Attorney's Fees are Reasonable……..……11

                 iv.   Any Agreement Required to be Identified Under Rule 23(e)(3)…..11

            4.   The Proposed Settlement Treats Class members Equitably…………...11

       B.   The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval…...12

            1.   The Settlement Agreement is the Result of Informed, Non-Collusive,
                 Arm's Length Negotiations Between the Parties………………….…..12

            2.   The Complexity and Likely Duration of the Litigation Favors Approval
                 of the Settlement………………………………………………….………....13

            3.   The Parties Engaged in Sufficient Fact-Finding…………………….....14

iv

4.  The Settlement Provides Favorable Relief when Weighed Against Likelihood of Success on the Merits…………..……………………...16

5.  The Opinion of Class Counsel and the Class Representative………....18

6.  The Reaction of Absent Settlement Class Members…………..……...19

7.  The Settlement Is in the Public's Interest………………………..……...20

V.  Notice Satisfies Due Process and Rule 23 .........................................................21

VI.  Certification of the Settlement Class...........................................................…24

VII. Conclusion...........................................................................................................…24

# TABLE OF AUTHORITIES

## Cases

*Bert v. AK Steel Corp.*,
   2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)................................................ 12

*Brown v. Transurban USA, Inc.*,
   318 F.R.D. 560 (E.D. Va. 2016) ...................................................................... 8

*Espinosa v. United Student Aid Funds, Inc*.,
   553 F.3d 1193 (9th Cir. 2008) ....................................................................... 23

*Fox v. Iowa Health Sys.*,
   2021 WL 826741 (W.D. Wis. Mar. 4, 2021)................................................. 16

*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) ........................................................................ 22

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
   2013 WL 692856 (E.D. Mich. Feb. 26, 2013) ................................................ 6

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) .............................. 16

*Hanlon v. Chrysler*,
   150 F.3d 1011 (9th Cir. 1998)....................................................................... 19

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018).................................................................. 20

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003)...........................................................19, 21

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ........................................... 22

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ................................................................ 13

*In re Experian Data Breach Litig.*,
   No. SACV 15-01592 AG (DMFx) .................................................................. 18

*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013)......................................................................... 17

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) .......... 20

*In re Target Customer Data Sec. Breach Litig.*,
   No. MDL 14-2522 (D. Minn. Mar. 18, 2015) ..........................................17, 20

*In re The Home Depot, Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) ................................................. 18

vi

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1 (D.D.C. 2017) ..................................................................... 16

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales
    Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020).................................. 8

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen.
    Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) .......................................................... 16

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
    Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408 (E.D. Mich. July 31,
    2008) ...................................................................................................................... 15

*Kritzer v. Safelite Solutions, LLC*,
    2012 WL 1945144 (S.D. Ohio May 30, 2012) .......................................... 14, 15

*Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*,
    544 U.S. 1044, 125 S. Ct. 2277, 161 L.Ed.2d 1080 (2005)............................... 9

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)............................................................. 7

*Luevano v. Campbell*,
    93 F.R.D. 68 (D.D.C. 1981) ............................................................................. 19

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ................................................. 19

*Mullane v. Central Hanover Bank & Trust Co*.,
    339 U.S. 306 (1950) .......................................................................................... 21

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 9

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008)...................................................................... 19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .......................................................................................... 21

*Stott v. Capital Financial Services*,
    277 F.R.D. 316 (N.D. Tex. 2011) ..................................................................... 22

*Thacker v. Chesapeake Appalachia, LLC.*,
    695 F.Supp.2d 521 (E.D. Ky. 2010) ................................................................. 12

*Thomsen v. Morley Companies, Inc.*,
    No. 1:22-CV-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023)............ 17

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .............................................................. 7, 14, 18

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................................ 6

**Federal Rules**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 22

Fed. R. Civ. P. 23(e) ............................................................................... 6, 21

Fed. R. Civ. P. 23(e)(2) ............................................................................ 6, 7

Fed. R. Civ. P. 23(e)(2)(D) .......................................................................... 12

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995) ...................................... 9

## I.      INTRODUCTION

On March 13, 2024, the Court granted preliminary approval of the Settlement between Plaintiff Lochridge and Defendant Qualified Staffing, and ordered that notice be given to the Class. ECF No. 39.[1] The Settlement establishes a non-reversionary $2,000,000.00 Settlement Fund from which substantial and immediate benefits will be provided to the Settlement Class consisting of 71,495 Class Members.[2] This is an outstanding result for Plaintiff and the Settlement Class.

The Settlement makes the following monetary relief available to all Settlement Class Members: (i) reimbursement of up to $175.00 for Lost Time spent responding to the Data Incident, at a rate of $35.00 an hour (SA, ¶ 2.3.2); (ii) reimbursement of Out-of-Pocket Losses up to $500.00 for expenses incurred as a result of the Data Incident *(id.,* ¶ 2.3.1); (iii) reimbursement of up to $7,500.00 for extraordinary out-of-pocket losses to Settlement Class Members who experienced identity theft or fraud *(id.)*; and (iv) *pro rata* cash payments of up to $850.00 *(id.* ¶ 2.3). In addition, all Settlement Class Members may enroll in three (3) years of Credit Monitoring and Identity Theft Protection Services. *Id.* ¶ 2.3.4. All Settlement Class Members will

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement (ECF No. 38-1). Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

[2] While the Motion for Preliminary Approval referenced 81,355 Class Members, the Settlement Administrator determined the actual number of Class Members to be 71,495 after de-duplicating the contact files provided by Defendant.

also benefit from substantial business practice changes and remedial measures designed to secure PII within Qualified Staffing's network and prevent similar data security incidents from occurring in the future. *Id.* ¶ 2.4.

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—after extensive investigation, hard-fought litigation, and arm's-length negotiations. Although Plaintiff and Class Counsel believe in the merits of their claims, Defendant denies each and all of the claims and contentions alleged against it in the Litigation, including all charges of wrongdoing or liability. The claims involve the intricacies of data security litigation (a fast-developing area in the law), and the Plaintiff would face risks at each stage of litigation. Against these risks, Class Counsel and the Plaintiff believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual Notice was provided directly to the Settlement Class Members and successfully reached 94.3% of the Class. *See* Declaration of Christopher Leung ("Leung Decl."), Exhibit 1 to Joint Declaration ("Joint Decl."), attached hereto, ¶ 9. In addition, the Settlement Administrator distributed publication Notice via national press release. Out of the 71,495 Settlement Class Members, **_no_** Class Member has sought to be excluded from the Settlement, and

2

*__no__* Class Member has objected to the Settlement. Leung Decl., ¶¶ 15-16.

Plaintiff now moves the Court for final approval. The Settlement meets all the criteria for final approval.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiff refers this Court to, and hereby incorporates, Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval (ECF No. 37) and Plaintiff's Memorandum of Law in Support of Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 41).

## III.     SUMMARY OF THE SETTLEMENT

Under the Settlement, Defendant agrees to establish a non-reversionary Settlement Fund of $2,000,000.00, from which numerous benefits to the Settlement Class will be provided. *Id.* ¶¶ 1.31, 2.3.3.

### A. Settlement Benefits

The Settlement Class consists of 71,495 members. Pursuant to the Settlement, Class Members have the opportunity to submit a Claim for the following Settlement benefits:

Reimbursement for Lost Time—All Settlement Class Members may submit a claim for reimbursement of Lost Time up to five (5) hours at thirty-five dollars ($35.00) per hour (up to a maximum of $175.00). *Id. ¶* 2.3.2. Settlement Class

Members can receive reimbursement of Lost Time with a simple attestation that the time spent was in response to the Data Incident. *Id.* No supporting documentation is required.

    <u>Reimbursement of Out-of-Pocket Losses</u>—Settlement Class Members may also submit a claim for reimbursement for Out-of-Pocket Losses, not to exceed $500.00. *Id.* ¶ 2.3.1(1). Settlement Class Members must simply submit a valid Claim Form, including documentation supporting the loss. *Id.* ¶ 2.3.1.

    <u>Reimbursement of Extraordinary Losses</u>—Additionally, Settlement Class Members may submit a claim for reimbursement for Extraordinary Losses up to $7,500.00. *Id.* ¶ 2.3.1(2). To receive this reimbursement, a Class Member must submit a valid Claim Form that includes sufficient supporting documentation. *Id.*

    *<u>Pro Rata</u> Cash Payment*— In addition to the foregoing Settlement benefits, all Settlement Class Members who submit a claim are also eligible to receive a *pro rata* portion of the Settlement Fund. *Id.* ¶ 2.3.3. The amount of this benefit will be based on the number of claims received and the amount remaining in the Settlement Fund following the payment of any Attorneys' Fees and Expenses Award, any Service Award approved by the Court, the costs of Claims Administration, costs related to the CAFA Notice, the cost of Credit Monitoring and Identity-Protection Services, claims for Out-of-Pocket Losses, and claims for Lost Time. However, any individual *Pro Rata* Cash Payment will not exceed $850.00. *Id.* If any portion of the

4

Settlement Fund remains after all benefits and costs have been paid, the Parties will meet and confer regarding the appropriate use of such residual funds, including the possibility of providing additional Credit Monitoring and Identity-Protection Services or paying any such funds to the National Cybersecurity Alliance as *cy pres* recipient. *Id.*

Credit Monitoring and Identity-Protection Services—All Settlement Class Members are eligible to receive three (3) years of Credit Monitoring and Identity-Protection Services, which will include a minimum of the following features: (i) three-bureau credit monitoring; (ii) identity theft insurance (with a $1,000,000 policy limit); (iii) real-time credit monitoring services; and (iv) access to fraud resolution agents. *Id.* ¶ 2.3.4. A Settlement Class Member need only to enroll in the service.

In addition to the foregoing benefits, all Settlement Class Members will benefit from substantial business practice changes and remedial measures designed to secure PII within Qualified Staffing's network and prevent similar data security instances from occurring in the future. *Id.* ¶ 2.4. These measures inure to the benefit of the Settlement Class as their information remains in Defendant's possession. The costs associated with implementing and maintaining these Business Practice Commitments are being paid by Defendant separately and do *not* come from the Settlement Fund. *Id.*

### B. Notice and Administration Expenses

The Settlement Fund is also being used to pay the cost of sending the Notice to Settlement Class Members, sending the CAFA Notice, and the costs of the administration of the Settlement. *See id.* ¶ 3.2; *see also* Leung Decl. at ¶ 17.

### C. Attorneys' Fees, Expenses, and Service Award

Class Counsel have moved the Court for an award of their reasonable attorneys' fees incurred, in an amount not to exceed thirty percent (30%) of the Settlement Fund, and reimbursement of documented costs and expenses of an amount not to exceed $35,000.00, to be paid from the Settlement Fund. SA, ¶ 7.2. Class Counsel have also moved the Court for a Service Award to the Class Representative of $2,500.00 ("Service Award") for the time he has committed for the benefit of the Settlement Class. *Id.* ¶ 7.3.

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th

Cir. 2007) (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors to consider. *See UAW*, 497 F.3d at 631. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

7

The Settlement before the Court meets each of these considerations.

## A. The Settlement Satisfies All of the Rule 23(e)(2) Factors

### 1.  The Class Was Adequately Represented

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). Here, the Class Representatives have the same interests as all other Settlement Class Members, as they are asserting the same claims and share the same injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead this litigation, and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. *See* Order Granting Preliminary Approval, ECF No. 40; *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### 2.  The Settlement Was Negotiated at Arm's Length

The negotiations in this matter occurred at arm's length. *See* Joint Decl., ¶¶ 5-6. Settlements reached by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate and reasonable. *See Leonardo's*

*Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*, 544 U.S. 1044, 125 S. Ct. 2277, 161 L.Ed.2d 1080 (2005) ("'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

### 3.  The Relief Is Adequate Under Rule 23(e)(2)(C)

The relief offered to Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Incident and is more than adequate under the factors outlined in Rule 23(e)(2)(C).

Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

### i.  The Costs, Risk, and Delay of Trial and Appeal

As outlined in the preliminary approval motion and motion for attorneys' fees, Plaintiff and the Class would have faced significant risks and costs if they had

continued to litigate the case. First, there was a risk that Plaintiff's claims would not have survived, in part or full, on a class-wide basis after a motion for class certification, motions for summary judgment, *Daubert* motions on damages methodologies, and other motions. Second, if Plaintiff prevailed on a motion for class certification, successfully defeated all of Defendant's other objections and motions, and proceeded to trial, Plaintiff  would have still faced significant risk, cost, and delay, including likely interlocutory and post-judgment appeals.

Comparing the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members with valid claims for Out-of-Pocket Losses or Lost Time will receive guaranteed compensation immediately, provides Settlement Class Members with access to credit monitoring and identity theft protection services (benefits that may not have been available at trial), and provides Settlement Class Members with *pro rata* cash payments. The substantial cost, risk, and delay of the trial and appeal process support a finding that the proposed Settlement is adequate.

### ii.  The Method of Distributing Relief Is Effective

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which was provided to all Settlement Class Members, laying out the benefits to which they are entitled.

The Notice to the Settlement Class of the available relief was efficient and effective. The Notice Program included dissemination of individual notices by direct mail and email. This direct mail notice reached 94.3% of the Class. *See* Leung Decl., ¶¶ 4-9. Therefore, Settlement Class Members received effective and efficient notice of the relief offered. Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief is efficient and effective, and the proposed Settlement is adequate under this factor.

### iii. The Terms Relating to Attorneys' Fees Are Reasonable

Class Counsel has requested $600,000 in attorneys' fees. This request is on par with awards routinely granted by courts in the Sixth Circuit and is supported by a lodestar crosscheck, as laid out in the previously filed Attorneys' Fee Motion. ECF No. 41. This factor supports approval of the proposed Settlement.

### iv. Any Agreement Required to Be Identified Under Rule 23(e)(3)

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 4.  The Proposed Settlement Treats Class Members Equitably

The Settlement Class Members are treated equitably because they all have similar claims arising from the same data breach, and they are all treated the same

under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement, including compensation for the time spent responding to the Data Incident, compensation for Out-of-Pocket Losses, *pro rata* cash payments up to $850.00, and three (3) years of identity protection and credit monitoring services.

Accordingly, the factors under Rule 23(e) support final approval. As discussed below, the *UAW* factors are similarly satisfied.

## B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval

### 1. The Settlement Agreement Is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between the Parties

The first factor heavily weighs in favor of granting final approval. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, LLC.*, 695 F.Supp.2d 521, 531 (E.D. Ky. 2010). Negotiations overseen by a neutral mediator are given extra weight. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent mediator in settlement negotiations virtually insures (sic) that the negotiations were conducted at arm's length and without collusion between the parties").

This Settlement was achieved only after significant litigation, the exchange of pre-mediation discovery, the exchange of detailed mediation statements, and a full-

day mediation session with highly respected mediator, Hon. Wayne R. Andersen (Ret.) of JAMS. Judge Andersen has substantial experience mediating and resolving complex class actions, including data breach class action settlements. *See* Joint Decl., ¶ 6. Judge Andersen's active involvement ensured that the negotiations proceeded at arm's length. Indeed, it was not until after an all-day mediation with hard bargaining on both sides that a mediator's proposal was ultimately made and accepted by the Parties. *Id.*

## 2. The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the Settlement

The second factor the Sixth Circuit evaluates also supports final approval. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("[E]xpense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement"). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated." *Id.*

This action has been pending for nearly two years and has already involved a contested motion to dismiss, multiple court appearances, and the exchange of discovery. Absent settlement, this case could continue to drag on for additional years. Continued pre-trial litigation would be extensive, with voluminous discovery needed from Qualified Staffing and any third-party companies that Qualified Staffing has used in an information technology capacity. Experts would be required

13

to testify regarding Qualified Staffing's data security practices and how they compare to industry standard practices. Substantial fact-finding would be required into what information that was taken, how it was taken, and the type of impact this has had, and will continue to have, on the Settlement Class. Plaintiff would need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would likely follow. Litigation would be extraordinarily complex and it could take several years for the Class to see any real recovery, if any at all. Thus, this factor favors approval. *See UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement.").

### 3.  The Parties Engaged in Sufficient Fact-Finding

The Court next asks whether the plaintiff has enough information to "adequately assess their case and the desirability of the proposed settlement" at this stage of the proceedings. *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.*

14

Here, although the Parties reached a proposed settlement before the end of the discovery period, Class Counsel made an informed decision regarding the appropriateness of settlement. Prior to negotiating the Settlement, Class Counsel sought and obtained informal and formal discovery from Qualified Staffing on a number of topics, including: the number of individuals whose PII was compromised during the Data Incident; the types of PII potentially compromised; the mechanics of the Data Incident; the remedial actions Qualified Staffing took after the Data Incident; and the terms of any potentially applicable insurance coverage. Joint Decl., ¶ 5. Class Counsel thoroughly evaluated this information in their analysis of damages. *Id.* Through the above process and the mediation, Class Counsel came to understand the Data Incident and the issues arising from it, and obtained an excellent settlement for the Settlement Class Members. *Id.* ¶¶ 8, 13; *see also Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (noting the use of informal discovery as an adequate tool for class counsel to make an informed decision). Combined with their experience and the fact that the Court had already ruled on Defendant's motion to dismiss, Class Counsel had all the information needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7. Thus, the Court should find that Class Counsel conducted sufficient fact-finding.

**4. The Settlement Provides Favorable Relief When Weighed Against the Likelihood of Success on the Merits**

To "judge the fairness of a proposed compromise," a court "weigh[s] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). While Plaintiff is confident in his claims, proceeding to trial presents real risk, as is true in all complex class actions—and this area of law is especially risky. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *2–4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases implicating more sensitive data have been found insufficient at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (finding that the factual allegations in the complaints were insufficient to establish standing), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing). As another court observed when approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result. . . . [they] are particularly risky, expensive, and complex." *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

16

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. Given the risk and uncertainty, settlement is the more prudent course when a reasonable agreement can be reached. The damages methodologies in this case, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g., In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

In light of the above, the $2,000,000.00 Settlement Fund achieved for the Settlement Class of 71,495 members is an outstanding result. Joint Decl., ¶ 7. The Settlement Fund amounts to ***$27.97 per Settlement Class Member*** and far exceeds the data breach settlement approved by this Court in *Thomsen v. Morley Companies, Inc.*, No. 1:22-CV-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023). *Id.* (approving a data breach settlement fund of $4.3 million for a class of 701,280 individuals, amounting to $6.13 per class member). Indeed, by providing a non-reversionary fund worth nearly $28 per Settlement Class Member, this Settlement far exceeds data breach settlements regularly approved by this and other courts. *See, e.g., In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ($0.17 per class member); *In re The Home Depot, Customer Data*

*Sec. Breach Litig.*, No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member); *In re Experian Data Breach Litig.*, No. SACV 15-01592 AG (DMFx), 2019 U.S. Dist. LEXIS 81243, at *25 (C.D. Cal. May 10, 2019) (noting that the settlement provided a $1.47 payout per person, "which compares favorably to other approved data breach settlements") (collecting cases showing same); *see also* Joint Decl., ¶ 9. The settlements in similar data breach class actions underscore Plaintiff's exemplary resolution for the Settlement Class.

Based on Class Counsel's experience in similar cases, the Settlement Fund and the meaningful business practice changes provide ample compensation for Settlement Class Member's legitimate individual claims and for class-wide claims in the aggregate. *See* Joint Decl., ¶ 23.

### 5.  The Opinions of Class Counsel and the Class Representative

"The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW. v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *18 (E.D. Mich. Aug. 29, 2008).

Here, Class Counsel and Plaintiff support the Settlement. Joint Decl., ¶¶ 22-23. They do so because, as explained herein, this Settlement is an excellent result for Settlement Class Members in light of the risks of continued litigation, particularly when compared to similar data breach settlements. *See* Sections III.A and IV.B.4. This *UAW* factor therefore also favors final approval.

18

### 6.  The Reaction of Absent Settlement Class Members

In most class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with a settlement in which 79 out of 11,000 class members objected). But here, to date, absolutely **_no_** class members have objected to any aspect of the Settlement. Leung Decl., ¶ 16. Similarly, absolutely **_no_** class members have requested exclusion from the Settlement. *Id*. ¶ 15. This *UAW* factor therefore heavily weighs in favor of final approval. *See, e.g.*, *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."); *Luevano v. Campbell*, 93 F.R.D. 68, 91 (D.D.C. 1981) ("The fact that only one-sixth of one percent of the class has chosen to object to the settlement is an important indication of its fairness and adequacy.").

Here, the Settlement Class's initial reaction to the Settlement is very positive and strongly supports final approval. The claims deadline is July 25, 2024. As of June 7, 2024, a total of 995 claims have already been received from Settlement Class Members. *See* Leung Decl., ¶ 14. This already amounts to a claims rate of 1.4% of Settlement Class Members, and this rate is expected to grow before the July 25, 2024 claims submission deadline. *Id*. A claims rate of 1.4% more than a month before the deadline compares favorably to the claims rates in other data breach class action settlements. *See, e.g., In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) (approving data breach class settlement where the "number of claims submitted reflects a response rate of approximately 0.25%"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with a claims rate of roughly 0.23 percent).

### 7.  The Settlement Is in the Public's Interest

Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously different and unpredictable and settlement conserves judicial resources." *In re Cardizem CD*

*Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The settlement of a class action affecting approximately 71,495 people is consistent with the public interest, as it conserves judicial resources and ensures uniformity.

All of the *UAW* factors weigh in favor of approval, and the Settlement Agreement is fair, reasonable, adequate, and not a product of collusion. The Court should therefore grant final approval.

## V.    NOTICE SATISFIED DUE PROCESS AND RULE 23

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. ECF No. 39. That plan has now been fully carried out by settlement administrator Simpluris. *See* Decl. Leung., ¶¶ 4-14. As outlined in detail in Simpluris's supporting declaration, the Notice Plan and its execution satisfied all the requirements of Rule 23(c).

To satisfy due process, notice to class members must be the best practicable method and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided when class members can be located and

identified through reasonable effort, notice may be provided by U.S. mail, electronic

mail, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

The direct mail Notice in conjunction with publication notice, utilized here, is

the gold standard and is consistent with notice programs approved by other courts.

*See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL

5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding a notice plan where a

combination of mail and publications notice reached 81.8% of the class to be "the

best notice practicable"); *Stott v. Capital Financial Services*, 277 F.R.D. 316, 342,

(N.D. Tex. 2011) (approving notice sent to all class members by first class mail). In

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016), the Sixth

Circuit found that the notice and claims processes satisfied Rule 23 where 90.8%

of notices were successfully delivered to addresses associated with class members.

The Notice plan here easily meets this standard. On April 26, 2024, Simpluris

mailed the Double Postcard Notice with tear-away claim form to 71,116 Class

Members. The Settlement Administrator re-mailed or emailed Postcard Notices and

Claim Forms to Class Members for which the initial Postcard Notice was returned

or undeliverable but for which the Settlement Administrator was able to obtain an

alternative mailing address through skip tracing, forwarding information, or other

means. *Id.*, ¶¶ 6-8. After all re-mailings, Simpluris reasonably believes that direct

notice reached 67,424 of the 71,495 Settlement Class Members, which equates to a

reach rate of the direct notice of 94.3% of the Settlement Class. *See* Leung Decl., ¶¶ 6-9. In addition, Simpluris provided publication notice through a national press release to ensure a broad and robust notice program. *Id.,* ¶ 10. Further, the dedicated Settlement Website, www.qualifiedstaffingdatasettlement.com, went live on April 26, 2024, and allowed Settlement Class Members to obtain copies of relevant documents, including the Long Form Notice, and submit a Claim Form online. *Id*., ¶ 11. Simpluris also established a toll-free telephone number for Settlement Class Members to call and obtain additional information about the Settlement, and to request a paper Claim Form. *Id.,* ¶ 13.

The Notice adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and was organized in a way that allowed Settlement Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Espinosa v. United Student Aid Funds, Inc*., 553 F.3d 1193, 1202 (9th Cir. 2008), aff'd, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'").

Notice here was robust, effective, and met all due process requirements, as well as the requirements of Rule 23(c). This weighs in favor of final approval as well.

## VI.   CERTIFICATION OF THE SETTLEMENT CLASS

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class, finding that the Class satisfies all Rule 23 requirements. ECF No. 39. Nothing has changed since that finding that could conceivably undermine class certification. Accordingly, Plaintiff respectfully requests that the Court finally certify the Settlement Class for Settlement purposes.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed order granting final approval of the Settlement.

Dated: June 13, 2024                         Respectfully submitted,

*/s/ A. Brooke Murphy*
A. Brooke Murphy (*pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
abm@murphylegalfirm.com

William B. Federman (*pro hac vice*)
**FEDERMAN & SHERWOOD**

24

10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
T: (405) 235-1560
wbf@federmanlaw.com

*Class Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *William B. Federman*
William B. Federman

25